S. BARTLETT KERR, Appellant, *vs.* OSCAR MILLER, Sheriff, *et al.* Appellees.

*Opinion filed October 28, 1913.*

1. REDEMPTION—*if any part of a note is given for a bona fide debt the holder may secure judgment and redeem.* If any part of a note is given for a *bona fide* indebtedness of the maker to the payee the latter may secure judgment and redeem from a foreclosure sale of the maker's property, and it is of no concern to the purchaser at the foreclosure sale that the note is given for too large an amount, as that concerns only the maker and the payee.

2. SAME—*redemption may be based upon an indebtedness incurred after the debtor's period of redemption has expired.* The "judgment creditor" who, by section 18 of the act relating to judgments and decrees, is allowed to redeem from a foreclosure sale of the debtor's property within three months after the debtor's period for redemption has expired, includes any person having a valid judgment upon which execution may issue at the time he seeks to redeem, whether the indebtedness arose before or after the debtor's period for redemption had expired.

APPEAL from the Circuit Court of Massac county; the Hon. A. W. LEWIS, Judge, presiding.

FRED R. YOUNG, for appellant.

H. A. EVANS, for appellees.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

On and prior to January 28, 1911, William King was the owner of 215 acres of land in Massac county, subject to a mortgage for $5500 on 205 acres thereof, held by Fannie Quante, and subject to the lien of certain judgments which had been obtained against him in the circuit court of Massac county. On the date above mentioned the 205 acres covered by the Quante mortgage were sold by the sheriff of Massac county to appellant, S. Bartlett Kerr, for $197.85, to satisfy certain executions issued upon judgments which had been rendered against William King. In making this purchase Kerr was acting as trustee for G. S. Corley and R. C. Leeper, who furnished 26/71 of the purchase price, and for Thomas P. King, a brother of William King, who furnished the remaining 45/71 of the purchase price, and these parties agreed with Kerr to furnish all other moneys necessary to obtain a deed to the premises in the same proportion, and to pay, in addition thereto, a reasonable fee to Kerr for his services. The remaining ten acres were sold on February 25, 1911, by the sheriff, to Thomas P. King for $279.23, to satisfy an execution issued upon a judgment in favor of the First National Bank of Metropolis. William King did not redeem within the twelve months given him by statute to redeem from these sales. After the twelve months within which he could redeem from these sales had expired, and prior to the expiration of the time provided by statute for redemption by judgment creditors, William King negotiated and concluded an arrangement with Walter Corley and Owen Corley whereby the Corleys were to furnish the money to pay certain claims against William King, take a judgment note from him for the aggregate amount of the claims paid by them, obtain judgment upon this note, redeem from the

execution sales, and pay William King $1700 and surren-
der to him a note for $75 which he had theretofore given
to James Corley, the father of Walter and Owen Corley,—
the object of this arrangement being to enable the Corleys
to obtain title to the 215 acres of land above mentioned,
subject to the Quante mortgage, and to enable William
King to realize out of his land $1700 net and to obtain
the surrender of the note for $75 which he had previously
given to James Corley. The claims against William King
which the Corleys agreed to pay consisted of a claim for
$52.15 for taxes paid by Fannie Quante upon the land
covered by her mortgage, a claim for $541.75 in favor of
Thomas P. King, and one for $313 in favor of G. S. Cor-
ley, for interest paid by them upon the Quante mortgage,
these amounts aggregating $906.90. The amount required
to redeem from the execution sales was $533.63.

In accordance with the arrangement above mentioned,
the Corleys paid to Fannie Quante $52.15, to G. S. Cor-
ley $313 and gave William King their check for $541.75,
payable to his order, which he endorsed and delivered to
Thomas P. King in payment of his claim for interest paid
upon the Quante mortgage. William King thereupon exe-
cuted and delivered to the Corleys a judgment note for
$1450 and received $9.47 in cash, this cash payment being
made because the aggregate amount of the claims paid by
the Corleys, together with the amount necessary to redeem
from the execution sales, was $9.47 less than the principal
of the judgment note. On April 26, 1912, being the same
day the judgment note was given, the Corleys obtained
judgment thereon by confession in the circuit court of
Massac county. On the following day William King exe-
cuted and delivered to the Corleys a deed to the premises
and received from them $100 in cash and the note for $75
which he had given to James Corley. The Corleys also
executed and delivered to William King their note for
$1600, payable January 1, 1913, and a mortgage upon the

premises above mentioned securing the same. On April 28, 1912, the Corleys paid to the sheriff the amounts necessary to redeem from the sales to Kerr and Thomas P. King, and on May 25, 1912, the sheriff sold the land under the execution issued upon the judgment obtained by the Corleys, and Walter and Owen Corley became the purchasers at that sale, and the sheriff on the same day executed and delivered to them a deed to the whole premises. Thereafter, on July 2, 1912, Kerr filed his bill of complaint in the circuit court of Massac county against Oscar Miller, as sheriff of Massac county, and Walter Corley and Owen Corley, praying that the deed of April 27, 1912, from King to the Corleys, the certificate of redemption issued by the sheriff on April 28, 1912, and the deed of May 25, 1912, from the sheriff to the Corleys, be set aside and declared null and void, and that the sheriff be required, by decree, to make and deliver to Kerr a deed conveying the premises to him. The complainant, in an amendment to the bill, offered to re-pay to Walter and Owen Corley all moneys paid by them to relieve the real estate in controversy of liens, mortgages, taxes, etc. The evidence was heard by the chancellor, and in addition to the facts above stated disclosed that G. S. Corley and R. C. Leeper accepted their proportionate part of the redemption money paid by Walter and Owen Corley to the sheriff, but that Thomas P. King refused to accept any portion thereof, and that this suit is, in fact, being prosecuted by Thomas P. King. After hearing the evidence the court entered a decree dismissing the bill for want of equity. Kerr has prosecuted this appeal to reverse that decree.

Appellant urges two grounds for reversal: First, that the $1450 note was given without any consideration; and second, that a judgment obtained on a debt created after the debtor's period of redemption has expired cannot be made the basis of a redemption by a judgment creditor.

While it appears from the evidence and is conceded by counsel for appellees that the amount required to be paid the sheriff to redeem from the two sales ($533.63) was erroneously included in the note and that the note should have been given for $916.37 instead of $1450, this is of no concern to appellant. If any part of the note was given for a *bona fide* indebtedness, the holder had the right, so far as appellant is concerned, to secure judgment and redeem from the sale. If there was any error in the amount for which the note was given, that was a matter in which only the payor and payee in the note were interested. Of the consideration of $916.37 for which the note was actually given, Walter Corley gave William King his check for $541.75, payable to King's order. William King endorsed the check and gave it to his brother, Thomas P. King, to reimburse him for interest he had paid on the Quante mortgage, and Thomas P. King secured the money on the check. G. S. Corley was re-paid the amount of interest he had paid on the same mortgage, and the mortgagee, Fannie Quante, was reimbursed the amount she had paid for taxes on the mortgaged property. These were all amounts for which William King was liable, although the land was also liable for their payment. Each of these parties accepted the sum paid as a payment by William King, and by an amendment to his bill the appellant offers to refund these amounts. The remainder of the consideration for the note ($9.47) was paid to William King in cash. There was no fraud in the transaction and there is no failure of consideration. Aside from the error in the amount of the note, the Corleys secured a valid, enforceable judgment against William King.

Whether a creditor can redeem under a judgment secured upon an indebtedness which has accrued after the debtor's period of redemption has expired has never been expressly decided by this court. It has been held that "any judgment creditor," designated by section 18 of the

act in regard to judgments and decrees as being entitled to redeem, means any creditor having a judgment upon which execution may issue at the time he seeks to redeem, without regard to the time when the judgment may have been recovered. (*Meier* v. *Hilton,* 257 Ill. 174.) As the execution debtor has twelve months in which to redeem, and any judgment creditor may redeem at any time within three months thereafter, it follows, under the holding just set out, that it is immaterial whether the judgment has been secured before or after the debtor's period of redemption has expired. No good reason has been shown, nor can any be perceived, why a creditor cannot redeem under a judgment secured on an indebtedness which was incurred after the debtor's right to redeem has expired. If it is immaterial when the judgment is secured so long as it is before the final period of redemption expires, it certainly can be of no importance when the indebtedness for which it was secured arose. The term "any judgment creditor" includes every person who holds a valid judgment, no matter when his cause of action accrued. The purpose of our redemption laws is to enable the debtor's property to go as far as possible to extinguish his indebtedness, and to secure the accomplishment of this purpose the courts have always given these laws a liberal construction. (*Schuck* v. *Gerlach,* 101 Ill. 338; *Whitehead* v. *Hall,* 148 id. 253; *Strauss* v. *Tuckhorn,* 200 id. 75; *Strause* v. *Dutch,* 250 id. 326.) It would be anything but a liberal construction of this act to hold that the words "any judgment creditor" mean only one who secures his judgment on an indebtedness existing prior to the expiration of the debtor's period of redemption. Appellees were judgment creditors within the meaning of the act and had the right to redeem.

The decree of the circuit court is affirmed.

*Decree affirmed.*